**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAWN BONNEAU | No. 2:26-cr-00083-LEW |

# <u>MOTION FOR DETENTION</u>

The United States moves for pretrial detention of the defendant, pursuant to 18 U.S.C. § 3142. In support of this Motion, the Government also hereby submits its Memorandum in Support of its Motion for Detention, attached hereto, which provides a factual overview of the case and analysis of why the defendant should be detained.

1. Eligibility of Case. This case is eligible for a detention order because the case involves (check all that apply):

__X__ Conditions requiring a temporary detention order (18 U.S.C. § 3142(d))

__X__ A crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment 10 years or more is prescribed

__X__ Maximum sentence life imprisonment or death

____ 10+ year drug offense

____ Felony, with two prior convictions in above categories

____ Felony involving a minor victim, a firearm, destructive device or dangerous weapon or failure to register as a sex offender

__X__ Serious risk defendant will flee

__X__ Serious risk obstruction of justice

2. Reasons for Detention:

i. Temporary Detention. Please refer to the Government's Memorandum in Support of its Motion for Detention

ii. Other than Temporary Detention. The court should detain the defendant because there are no other conditions of release which will reasonably assure (check one or both):

_X_ Defendant's appearance is required

_X_ Safety of any other person and the community

These reasons are articulated with more detail in the Government's Memorandum in Support of its Motion for Detention.

3. Rebuttable Presumption. The United States will invoke the rebuttable presumption against the defendant under 18 U.S.C. § 3142(e). The presumption applies here because (check one or both if applicable)

_X_ Probable cause to believe the defendant committed an offense specified in 18 U.S.C. §3142(e) involving: drugs, firearms, terrorism, a minor victim, a crime of violence, an offense under 18 U.S.C. § 77, which includes sex trafficking by force, fraud or coercion, or conduct outside of the United States.

____ Previous conviction for "eligible" offense committed while on pretrial bond

4. Date of Detention Hearing. The United States requests that the detention hearing be held after a continuance of up to__3__ days.

5. Length of Detention Hearing. The United States will require __2__ hours to present its case for detention.

Date: August 14, 2026

ANDREW B. BENSON
UNITED STATES ATTORNEY

*/s/ Anne K. Yereniuk*
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Anne.Yereniuk@usdoj.gov

*/s/ Elizabeth A. Hutson*
Elizabeth A. Hutson
Trial Attorney
United States Department of Justice
Criminal Division, Human Rights and
Special Prosecutions Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-532-5578
Elizabeth.Hutson@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAWN BONNEAU | No. 2:26-cr-00083-LEW |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DETENTION

The United States, by Trial Attorney Elizabeth A. Hutson and Assistant United States Attorney Anne K. Yereniuk, hereby moves for pretrial detention of the defendant, pursuant to 18 U.S.C. § 3142. The totality of the circumstances demonstrates that this defendant presents a severe risk of flight so there are no factors that will reasonably assure his appearance at Court as required. 18 U.S.C. § 3142(b). The defendant is charged with Sex Trafficking by Force, Fraud, or Coercion in violation of 1591(a)(1), (b)(1). Accordingly, there is a presumption of detention under 18 U.S.C. § 3142(e)(3)(D) because the charged offense falls under Chapter 77 of Title 18 and has a maximum term of imprisonment of over twenty years. Additional factors, including those for which he is currently under investigation, demonstrate that his release poses a danger to the safety of other persons, or the community. Id. Under the factors outlined in 18 U.S.C. § 3142(g), the defendant cannot rebut this presumption, and there are no conditions or combination of conditions that will reasonably assure the safety of any person and the community if he is released.

The Court should especially consider "the weight of the evidence against" the defendant, as well as the defendant's "history and characteristics," particularly his lack of reliable known residences, criminal history, and alleged similar conduct in multiple

jurisdictions. 18 U.S.C. §§ 3142(g)(2) and (3). Additionally, in light of his predation upon multiple victims and other individuals that he has defrauded and exploited in a complex scheme spanning over a decade, releasing the defendant would pose a danger to other people and the community. 18 U.S.C. § 3142(g)(4). Furthermore, at the time of his offenses that he committed in the District of Maine resulting in this indictment, the defendant was in warrant status out of the State of Maine for violation of a protection from abuse order, which is a factor justifying temporary detention. See 18 U.S.C. § 3142(d)(1)(A)(i).

In support of this motion, the United States provides the following brief summary of the factual allegations as well as indicia within the factors set forth in 18 U.S.C. § 3142 that justify the defendant's detention. This summary does not include each and every fact known to the United States but clearly demonstrates the safety risk that the defendant poses to the victims as well as his risk of flight.

## GENERAL OVERVIEW SUMMARY OF THE SCHEME THAT THE DEFENDANT MASTERMINDED

On July 23, 2026, the Grand Jury returned a six-count indictment, charging the defendant with three counts (Counts #1, #2, and #3) of Sex Trafficking by Force, Fraud or Coercion, in violation of 18 U.S.C. § 1591 and three counts (Counts #4, #5, and #6) of Wire Fraud, in violation of 18 U.S.C. § 1343. Counts #1, #2, and #3 each pertain to three separate victims, who are referred to as "Victim 1," "Victim 2," and "Victim 3."

This is a complex investigation involving multiple victims, including individuals who have been victimized outside of the District of Maine whose victimization is not

encompassed by the charges in this indictment.[1] The overview of the facts presently known to law enforcement set forth below describe the general scheme that the defendant created and directed to "Victim 1," "Victim 2," and "Victim 3" as well as other individuals whose identities are known to the Government.

While most of the victims did not know each other at the time that the defendant perpetrated crimes against them, the defendant engaged in the same modus operandi in targeting them and using fraudulent and coercive tactics to involve them in commercial sexual activity for his financial benefit. Most of the victims were young, living in economic scarcity, and without stable family or emotional support at the time that the defendant inserted himself in their lives with promises of money-making opportunities. When the defendant ingratiated himself into the victims' lives, he presented himself as a worldly individual involved in film making and other influential economic ventures, with connections to well-known celebrities, including individuals involved in the entertainment industry.

In order to develop his pretend image as a well-connected individual, a false reputation that he used in this fraudulent and exploitative scheme directed at Victim 1, Victim 2, Victim 3, and others, the defendant created false personas on Instagram, Snapchat, other social media accounts and VoIP (voice over internet protocol) telephone numbers. Through these accounts that purported to be used by these personas who claimed to be affiliated with the defendant and other celebrities or notable people ostensibly in the defendant's orbit, the defendant communicated with Victim 1, Victim 2,

[1] Should this matter proceed to trial, the Government will likely file a motion to limine to introduce evidence, including digital data and testimony, from uncharged victims who were adversely affected by the defendant as intrinsic evidence or pursuant to Fed. R. Evid. 404(b).

Victim 3 and other victims that he targeted in his overall scheme. Unbeknownst to the victims at the time, the personas using these online accounts and VoIP numbers that messaged them were not the individuals that they claimed to be. Sometimes the defendant even created fake accounts representing himself to be some of the victims themselves, when the real-life victims were never the ones using those accounts to message others. The defendant, acting under this plethora of personas, used online accounts to bolster his reputation as a person of much more influence than he had in reality while offering lucrative job opportunities to the victims, including modeling, being an extra in music videos and reviewing locations for music videos and office spaces. Through these electronic communications, the personas that the defendant secretly assumed obtained the victims' trust, bolstered the impression of the defendant that he wished to create, and recruited the victims to become more involved in the defendant's overall enterprise. The defendant further gained the trust of the victims by adopting female personas of actual or fictitious females who vouched for the defendant's credibility and involvement in these alleged influential circles.

After subjecting the victims to these false impressions of the defendant's status through communications using fake personas, the defendant used fraudulent and coercive tactics to involve them in another aspect of his enterprise – that is, the filming of commercial sexually explicit content. The victims only agreed to participate in these filmed commercial sex acts because the defendant promised (again, falsely) that the videos were subject to a non-disclosure agreement, that the victims would make millions of dollars from the celebrities for filming the content, and that the defendant was someone they could trust, both professionally and personally. In addition, the victims participated in these commercial sex acts based on the belief that they were receiving

actual requests from real-life individuals other than the defendant with whom they had been communicating electronically.

The defendant also used other nefarious tactics to compel some of the victims to engage in the commercial sex videos that he sold to others. For example, the defendant harbored and transported Victim 1 in his car to multiple hotels, in Maine and in other states, where he compelled her to record sexually explicit videos for sale after she had no other financial means to return home. Similarly, while living with the defendant from 2016 until 2022, Victim 2 did not have many financial means, and often she and the defendant lived out of her car in Walmart parking lots, or in motels and short-term rental apartments, during which time the defendant had her film sex video content to make money that he purportedly sold to individual buyers.

The defendant then sold some of these sex videos to other individuals and utilized a variety of means to obtain transfers of U.S. currency via payment applications. The defendant, and others on behalf of the defendant, received funds through these payment applications, like CashApp for the sale of sexually explicit images and videos of Victim 1. Counts #4, #5, and #6 involve three separate payment application transactions that the defendant facilitated from one of the sex video content buyers to one of the witnesses that he convinced to use her payment application accounts as an intermediary, after which she transferred funds to him. However, those three transactions certainly do not encompass the entirety of the payment transactions that the defendant facilitated in his criminal enterprise that would constitute wire fraud. In fact, the defendant convinced one of the sex video buyers to invest up to approximately $250,000 over time in what the defendant claimed was an up-coming adult

entertainment company, which in reality, ended up being false promises and just further fraud.

Overall, the defendant subjected the victims that he preyed upon to intense psychological manipulation, including constantly flooding them with messages sent by the fake personas from the various accounts to pressure them to film sexually explicit content, some of which was extremely degrading. Victim 2 described the defendant as being with her "24/7," and "spending every waking hour trying to find people to buy her content" to the point that her only time apart from him was when she went to the bathroom. Many of the requests for filmed content involving Victim 1, Victim 2, and Victim 3 involved requests for degrading activity. During one of the films that the defendant directed where he partook in sex activity with Victim 1, he hurt Victim 1 and later told her that did not cut his nails "to tear her insides." During some of the encounters that he directed and filmed, the defendant urinated on Victim 3. These are just some of the examples where the defendant disregarded the victims' bodily integrity and dignity.

The defendant also engaged in a similar modus operandi instilling fear in his victims about consequences of what would happen if they left him to manipulate them to remain in his grasp and continue filming sexual content. Victim 1 was informed by multiple individuals supposedly in the defendant's orbit who communicated with her online that if she did not continue to produce and share more sexually explicit videos with them, they would contact her family members, friends and even her employer. The defendant repeatedly told Victim 1 that the buyers of the videos "are billionaires and can make people disappear." Similarly, when Victim 2 told the defendant that she wanted to leave him, he threatened to send the sex videos that he had to her family and friends.

The defendant also threatened Victim 2, "if you leave, you won't have a dad to go home to," which she interpreted as a threat to kill her father or have her father killed by one of his supposed connections. When the defendant reneged on promises to pay Victim 3, he began to coerce Victim 3 by threatening to sue her and share the videos of her sexual content online, and so she submitted to his demands and was coerced to be recorded to produce more commercial sexual content.

The defendant demonstrated that these threats were not empty but rather acted upon them. After Victim 1 ceased engaging in this activity and reported to law enforcement, the defendant constantly threatened her and then retaliated by sending sexually explicit content of Victim 1 to multiple family members, friends and coworkers. After one of the victims obtained a protection against abuse order, the defendant violated that order by threatening her.

All the victims have endured serious financial, emotional, and reputational harm, as direct result of the defendant's actions. After Victim 1, Victim 2, and Victim 3 and other victims who reside out of state reported these crimes and cooperated with authorities, law enforcement learned that he may have engaged in similar tactics towards other females based in California. The defendant likely manipulated, defrauded and exploited other individuals whose identities law enforcement may not even be aware of.

**REBUTTABLE PRESUMPTION**

As noted above, the defendant is charged with Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a)(1). *Id.* This offense is a basis for detention under 18 U.S.C. § 3142(f)(1)(A). In addition, Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591, carries a maximum sentence of life

imprisonment. Thus, this offense is also a basis for detention under 18 U.S.C. § 3142(f)(1)(B).

Where the court finds probable cause in cases involving a Chapter 77 offense "for which a maximum term of imprisonment of 20 years or more is proscribed," there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(D).

In this case, the charged crime of Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C.§ 1591(a)(1), is an offense under Chapter 77 and, as previously noted, carries a maximum sentence of life imprisonment. Thus, this offense triggers the rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. *Id.* This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C.

§ 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. For the reasons described above, the defendant cannot rebut the presumption in favor of detention and should be detained pending trial.

**LACK OF CONSISTENT RESIDENTIAL DOMICILES**

Without a consistent domicile, the defendant cannot be adequately supervised. Although the defendant grew up in the State of Maine, the Government does not anticipate that any family members would be willing to have the defendant reside with them. He has not established a residence in this District in years. The defendant frequently travels to various states and in the last decade, based on information known to investigators, has not appeared to stay at one location for any lengthy period of time.

Although the defendant lived in Florida for a number of years, prior to the dates of offenses charged in this indictment, likewise he has not established any permanent residency there in years. When he did domicile in Florida, in 2012, he was convicted of the state crime of Procure for Prostitution – Felony 3rd Degree for which he received an 18-month probationary sentence. Despite being granted a non-incarceration sentence for a similar crime, the defendant continued to subject victims in other states to commercial sexual exploitation, resulting in the indictment that captures his conduct in the District of Maine.

Despite spending several years residing in California, he does not have a consistent residence there. Even when he moved into a two-bedroom apartment in California, he would only spend a short time there and moved out in 2024 after "trashing" the room, leaving maggots on the floor and human feces on the walls, and threatening his roommate.

Since 2024, law enforcement has been unable to account for any consistent residence established by the defendant. During a motor vehicle stop in June 2026 in Las Vegas, the defendant was arrested on a State of Maine warrant for violation of the protection against abuse order that one of his victims obtained.

In short, there are no conditions of release that can account for his whereabouts nor assure his appearance at Court.

## CONCLUSION

Based on the totality of the circumstances, the defendant cannot be easily supervised nor guaranteed to come to Court. Given all of his behavior, he has every incentive to flee to avoid the fifteen-year minimum mandatory penalty that he faces for each of counts charging him with Sex Trafficking, in violation of 18 U.S.C. § 1591. He also faces up to twenty years imprisonment for each of the counts charging him with Wire Fraud, in violation of 18 U.S.C. § 1343. In summary, detention is justified for the following reasons:

(1) The Defendant has continuously engaged in criminal conduct, sexually and financially exploiting Victim 1, Victim 2, and Victim 3, and countless others.

(2) His prior conviction involves similar commercial sexual exploitation, so evidences a pattern.

(3) At the time of these offenses, the defendant was in active warrant status out of the State of Maine.

(4) The Defendant violated a protection from abuse order involving one of the victims in the indictment charged, which demonstrates a failure to abide by court orders.

(5) He lacks any demonstrable consistent and reliable residential domicile, and travels frequently between states throughout the East Coast and in California. He was located in the District of Nevada at the time of his arrest for the State of Maine matter.

(6) He has continually used false identities of personas online including creating numerous different phone numbers and social media accounts.

(7) If released, the Government is concerned that he may victimize others.

(8) Given the threats that he has made, including ones that he has followed through on, directed at Victim 1, Victim 2, and Victim 3, the defendant poses a serious risk that he will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a victim or witness.

Therefore, the only way to guarantee the Defendant's appearance in light of his flight risk as well as ensure the safety of current and potential victims and the safety of the community is to detain him. Accordingly, the Government's motion for detention should be ALLOWED.

Date: August 14, 2026

Respectfully submitted,

BY: /s/ Elizabeth A. Hutson
Elizabeth A. Hutson
Trial Attorney
United States Department of Justice
Criminal Division, Human Rights and
Special Prosecutions Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-532-5578
Elizabeth.Hutson@usdoj.gov

ANDREW B. BENSON
United States Attorney

BY: /s/ Anne K. Yereniuk
Anne K. Yereniuk
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
Anne.Yereniuk@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I caused the filing of the foregoing Motion with the Clerk of Court, which sent such notice to the individuals and entities who have entered appearances in this case, pursuant to the Court's ECF system.

ANDREW B. BENSON
United States Attorney

BY: _/s/ Anne K. Yereniuk_
Anne K. Yereniuk
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
Anne.Yereniuk@usdoj.gov